U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 17, 2020

**BY ECF**

Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

    Re:    *United States v. Anthony Corley, a/k/a "Tone,"* **18 Cr. 454 (KPF)**

Dear Judge Failla:

    The Government submits this letter in advance of the sentencing of Anthony Corley (the "defendant"), and in response to the defendant's sentencing submission, dated February 10, 2020 ("Def.'s Mem."). As explained below, the Government respectfully submits that a sentence within the range of 70 to 87 months' imprisonment, as called for by the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G."), should be imposed in this case.

    **I.**    **Offense Conduct**

    Since at least in or about 2013, the defendant sold and supplied crack cocaine to customers and other dealers in the West Farms section of the Bronx, New York, including in and around the Lambert Houses development. *See* United States Probation Office's Presentence Investigation Report ("PSR") ¶ 12. This included supplying co-defendants Sharon Hatcher, Jackie Cooper, Efrain Reyes, and Albert Collins, all of whom in turn made their own sales directly to customers. *Id.* Co-defendant Nelson, as well as another supplier known as "G," supplied the defendant gram-quantities of crack, all of which he distributed. *Id.* Indeed, on intercepted phone calls in January through March 2018, the defendant, Nelson, Hatcher, Cooper, and others discussed crack production, delivery, packaging, sale, and proceeds. *Id.* ¶ 13. These calls confirmed, definitively, that Corley conducted daily crack business, which was highly profitable for him. *Id.* Between October 2017 and May 2018, undercover police officers purchased crack from Corley on seven separate occasions. *Id.*

    **II.**    **The Defendant's Plea and Applicable Guidelines Range**

    Pursuant to an agreement with the Government, the defendant pled guilty on October 18, 2019, to one count of conspiring to distribute 28 grams and more of crack cocaine, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B). PSR ¶ 4. In the plea agreement, the parties stipulated that this offense carries a mandatory minimum sentence of five years'

February 17, 2020
Page 2

imprisonment and that the advisory Guidelines range was 87 to 108 months' imprisonment, based on an offense level of 27 and a Criminal History Category of III.  *Id.* ¶ 5.

Probation agrees with this offense level; however, because New York expunged the defendant's many marijuana convictions, Probation calculates the defendant's criminal history as a Category I.  *Id.* ¶¶ 48-70, 102-103.  This results in an applicable Guidelines range of 70 to 87 months' imprisonment, *id.* ¶ 102, which the Government accepts is the correct range based on current state law.

### III.  Discussion

#### A.  Applicable Law

Although *United States v. Booker*, 543 U.S. 220, 264 (2005), held that the Guidelines are no longer mandatory, it also held that district courts must "consult" the Guidelines and "take them into account" when sentencing.  As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark."  *Gall v. United States*, 552 U.S. 38, 49 (2007).

After performing that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) the four legitimate purposes of sentencing, as set forth below, (3) "the kinds of sentences available," (4) the Guidelines range itself, (5) any relevant policy statement by the Sentencing Commission, (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," and (7) "the need to provide restitution to any victims."  18 U.S.C. § 3553(a)(1)-(7); *see Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

February 17, 2020
Page 3

### B. Analysis

The Government respectfully submits that a sentence in the range of 70 to 87 months' imprisonment is appropriate in light of all of the sentencing factors set forth above, and would be sufficient but not greater than necessary to accomplish the goals of sentencing in this case.

*First*, the nature and circumstances of the offense weigh heavily in favor of such a sentence. For years, the defendant consistently sold poison to other people—including both street-level dealers and his own customers—knowing that those drugs fueled addiction in the community. The aggregate weight of drugs that the defendant supplied, sold, and conspired to distribute is extremely significant. As the Court is well aware, the drug trade throughout this city causes immeasurable harm to addicts, their families, and average citizens who are victimized by the crimes that users commit in order to continue feeding their habits. Even the street-level dealers are harmed by this economy, as mid-level suppliers like the defendant profit from sales of those under him, like Jackie Cooper and Sharon Hatcher. Certain communities in the Bronx are especially hard hit by secondary effects of drug activity; and in recent years, the Lambert Houses and greater Tremont neighborhood have seen countless murders, non-fatal shootings, stabbings, robberies, assaults, and other acts of violence, all stemming from battles over drug territory and other drug-related conflicts. The defendant's years-long participation in that market contributed in material ways to the environment where violent actors could thrive, prosper, and inflict even greater harms on the rest of the population.

*Second*, the defendant's history and characteristics weigh in favor of a sentence within the Guidelines range. Since 1999, the defendant has been arrested 21 times, 13 leading to reported convictions (five of which are now expunged). Five of these convictions were for criminal possession or sale of a controlled substance—two in 1999, one in 2002, one in 2013, and the most recent in 2017. *See* PSR ¶¶ 61-63, 67-68. The defendant has repeatedly received lenient sentences, usually conditional discharges or just a few days of imprisonment. *Id.* ¶¶ 63-68. It is clear this has instilled in him a lack of respect for the law. Apparently as a result of his never facing meaningful punishment for his repeated criminal activity, even after his 2013 arrest, 2015 conviction, and 2017 arrest and conviction, the defendant still chose to support himself by selling crack. At the time, he was an able-bodied man in his mid-30s with a claimed history of employment, which demonstrates that he could have worked rather than push crack in his neighborhood. *Id.* ¶¶ 84-88, 94-97; Def.'s Mem. at 6. Instead, and most egregiously, it appears that he left his last real job in 2013 and began dealing drugs to avoid having his wages garnished for child support, which explains why he is now more than $53,000 in arrears. *See* PSR ¶¶ 80, 95. A Guidelines sentence is thus needed to account for the defendant's history.

The defendant contends that he should receive considerable leniency based on his purported "long history of drug addiction." Def.'s Mem. at 4, 6. The investigation of this case—including several months of wiretaps on the defendant's own phone—generated *no* evidence that the defendant was a drug addict or ever used any drug aside from marijuana. To the contrary, the wiretaps (as well as controlled buys, social media reviews, and cooperating witness accounts) confirmed that he was a crack dealer and supplier who was focused on getting paid for his product, not on chasing his own personal high. Indeed, the defendant's own letters in support confirm that others in his life viewed him as "a role model in the community" and "a productive

citizen," *see* Def.'s Mem. Ex. B, "a fine responsible character," *see id.* Ex. D, and "an Outstanding Worker," *see id.* Ex. E; not a single letter mentions drug use. Nor does the defendant's medical history from the Metropolitan Correctional Center. To the contrary, his intake paperwork says: "Substance Use History: Denied." Between his arrest on March 8, 2019 and May 31, 2019 (the end date of the records the Government requested), the defendant did not report—and the MCC did not document—any indication that the defendant was going through withdrawal. Anyone who smoked crack at a rate of "two grams per day three to four times per week" and ingested cocaine "up to a gram per day three times per week," and did so "in the weeks leading up to his arrest," *see* PSR ¶ 92, would undoubtedly have suffered withdrawal symptoms sufficient to generate some kind of medical record.

The Government has readily acknowledged that certain defendants in this case were drug users and addicts. Jonathan Padilla, Efrain Reyes, Jackie Cooper, Sharon Hatcher, all had significant drug problems at various times throughout their lives and while involved in the conduct underlying this case. The wiretap on Padilla's phone confirmed that when he acquired drug product, he was often getting some to sell and some to use. Reyes was clearly experiencing withdrawal on the day of his arrest and while being presented in Magistrate Court. Cooper's and Hatcher's weights have changed considerably since they became sober in jail. There is no record to support the defendant's claim about his own claimed history of drug use.[1] It appears that he is simply exploiting sympathy for drug addicts in order to get reduced punishment, accompanied by an unnecessary drug treatment program that would lower even further the time he actually spends in prison.

*Finally*, a sentence within the Guidelines range is needed to adequately punish the defendant and to demonstrate the seriousness of his conduct, including his years of drug dealing, which has harmed the citizens of the Lambert Houses and broader Tremont community. Such a sentence would also promote respect for the law and serve to deter the defendant from future crimes—a goal that was not accomplished by any of his prior arrests and convictions. Looking beyond the defendant himself, in a case like this, where the defendant was known to be a supplier to many members of a large drug conspiracy that was charged federally, there is a

---

[1] In the context of facts that would affect the Guidelines calculation, it is well established that "though the government generally has the burden of proving facts upon which the requested penalties are predicated, . . . . [i]f the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease." *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992). This is because "[a]s a general matter, principles as to the allocation of burden of proof rest on goals and access," and "[a] party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue." *Id.* (citing 9 J. Wigmore, Evidence §§ 2485-2486 (3d ed. 1940)). "If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease." *Id.* (citing *United States v. Marquez*, 941 F.2d 60, 65-66 (2d Cir.1991) (financial inability to pay fine); *United States v. Garcia*, 920 F.2d 153, 156 (2d Cir.1990) (per curiam) (minor or minimal role in the offense)). *See also United States v. Krcic*, 186 F.3d 178, 182 n.6 (2d Cir. 1999) (citing *United States v. Howard*, 894 F.2d 1085, 1089 (9th Cir. 1990), which itself discusses opinions from the Third and Fourth Circuits, and *United States v. Trinidad-Lopez*, 979 F.2d 249, 251 (1st Cir. 1992)).

significant need for general deterrence—*i.e.*, for others who aspire to profit from the drug trade to learn that such activity will result in a lengthy sentence if prosecuted in federal court. In addition, a Guidelines sentence in this case will help protect the public from the defendant, his co-conspirators, and anyone else deterred by the incarceration of defendants in this case. Lastly such a sentence is needed to avoid an unwarranted sentencing disparity, as the defendant was plainly more culpable than Jackie Cooper (sentenced to 46 months' imprisonment), Jonathan Padilla (60 months), Darrell Hudson (68 months), and Lamar Griffin (70 months), none of whom supplied other dealers to the degree this defendant did.

### IV. Conclusion

For the foregoing reasons, the Government respectfully requests that the Court impose a sentence within the Guidelines range of 70 to 87 months' imprisonment.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

By: _____
Frank J. Balsamello / Sarah Krissoff /
    Dominic Gentile
Assistant United States Attorneys
(212) 637-2325 / -2232 / -2567

cc:     Meredith Heller, Esq., *counsel for defendant Anthony Corley* (by ECF)