UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

-v.-

ANTHONY CORLEY,

Defendant.

---

18 Cr. 454-3 (KPF)

**ORDER**

KATHERINE POLK FAILLA, District Judge:

Defendant Anthony Corley, who is currently incarcerated at the Federal Correctional Institution in Ray Brook, New York ("FCI Ray Brook"), has applied for compassionate release, in the form of immediate resentencing to a period of time served with a condition of home detention, pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Dkt. #271, 276-78, 287, 290).[1]  Mr. Corley principally contends in his motion papers that he is at an increased risk of contracting, or of having a greater reaction to infection from, the COVID-19 virus because of pre-existing medical conditions.  The Government opposes this motion, and notes in a supplemental submission that Mr. Corley has already contracted, and apparently recovered from, the COVID-19 virus.  (Dkt. #271, 287, 313).  As set forth in the remainder of this Order, the Court denies Mr. Corley's motion for compassionate release.

---

[1]   In the alternative, Mr. Corley, who was then housed at the Orange County Correctional Facility (the "OCCF"), sought a transfer to a federal facility. (Dkt. #271 at 1). Mr. Corley was subsequently transferred to FCI Ray Brook. (*See* Dkt. #276 (Government letter advising of contemplated transfer in September 2020)).

**BACKGROUND**

On June 26, 2018, Mr. Corley and eleven co-defendants were charged with conspiring to distribute, and to possess with the intent to distribute, crack cocaine, heroin, and marijuana, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), 841(b)(1)(D), and 846. (Dkt. #2). The charges arose from the conduct of Mr. Corley and his co-defendants in distributing narcotics in the West Farms section of the Bronx, in particular, in an area known as the Lambert Houses. (Dkt. #170 (Final Presentence Investigation Report ("PSR")) ¶ 9). Mr. Corley, for his part, supplied crack cocaine to numerous street-level dealers, while also selling to retail customers. (*Id.* at ¶¶ 12-13).

On October 18, 2019, Mr. Corley pleaded guilty pursuant to a plea agreement with the Government in which, among other things, Mr. Corley waived his right to appeal or to file a collateral challenge to any sentence of imprisonment within or below the stipulated range under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") of 87 to 108 months' imprisonment. (PSR ¶¶ 4-5; Dkt. #150 (plea transcript)). Of potential significance to the instant motion, Mr. Corley's Presentence Investigation Report recited numerous prior convictions, several of which were for narcotics offenses. (PSR ¶¶ 61-68, 73-74). What is more, Mr. Corley related no physical

or mental health issues during his presentence interview, though he did acknowledge prior drug abuse. (*Id.* at ¶¶ 84-92).[2]

At sentencing on February 24, 2020, the Court calculated the applicable Guidelines range to be 70 to 87 months' imprisonment, with a mandatory minimum term of 60 months. (Dkt. #219 (sentencing transcript ("Sent. Tr.")) at 35:10-21; *see also* Dkt. #187 (judgment)). In explaining the rationale for the 70-month sentence it imposed, the Court explained:

> In going through the Section 3553(a) factors that I was just talking about, this should be considered a very serious offense. Mr. Corley is at the higher end of the quantities in this conspiracy, and I take issue to a degree with the defense argument that Mr. Corley is not to blame for violence and trauma of the area in the Bronx that was cited by the government. I do believe, and the facts support, that he sold and supplied drugs to a number of people and, in so doing, worsened and debased the neighborhood. I do understand the arguments that he himself was not responsible for introducing violence into the neighborhood, but it is distressing to me that he was so willing, and for such a long period of time, to sell drugs, particularly given the history of substance abuse in his own family.
>
> With respect to Mr. Corley's history and characteristics, his family and his supporters have pointed out the many positive things he has done. His mom refers to him, probably always will, as her miracle baby. He was good growing up to his half-siblings in sort of putting them in the right path. He is, everyone agrees, devoted to his children.
>
> On the other hand, there is a very small history of legitimate employment and a lengthy history of contacts with the criminal justice system over a period of more than 20 years. And though his mom has suggested to me that the birth of his children caused him to

---

[2]   At sentencing, the Government disputed Mr. Corley's self-reported timeline of drug abuse. (Dkt. #219 (sentencing transcript ("Sent. Tr.")) at 11:12-25).

> reconsider his decisions in life, he continued to sell drugs despite the births of his two children.
>
> I have considered as well concerns in this case in particular about deterrence, about incapacitation, and about ensuring that there are no unwarranted disparities in sentences, and looking at the sentences I've imposed on other defendants in the case, I'm going to impose a sentence here at the low end of the guidelines range of 70 months' imprisonment, and I'm going to order that that term of imprisonment be followed by a term of supervised release of four years..

(Sent. Tr. 35:22-37:6). At the time of his sentencing, Mr. Corley had served almost twelve months in jail.

Mr. Corley filed a *pro se* application for compassionate release in July 2020. (Dkt. #271). The Court re-appointed Mr. Corley's trial counsel to assist him with his application (Dkt. #278), and a counseled supplement was filed on August 28, 2020 (Dkt. #287). The Government filed its opposition on September 4, 2020. (Dkt. #290). In January 2021, the Court requested supplemental information concerning Mr. Corley's medical status and the degree to which inmates and staff at FCI Ray Brook had tested positive for the COVID-19 virus. The Government responded by letter dated January 22, 2021, which letter related, among other things, that Mr. Corley tested positive for the virus on January 11, 2021; that he was placed in, and then released from, a ten-day quarantine; and that he remained asymptomatic during that period. (Dkt. #313).

## APPLICABLE LAW

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may reduce a

4

defendant's sentence upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant.  A defendant may move under § 3582(c)(1)(A) only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

When considering an application under § 3582(c)(1)(A), a court may reduce a defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).  "The defendant has the burden to show he is entitled to a sentence reduction." *United States* v. *Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing *United States* v. *Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)).

Congress previously delegated responsibility to the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction."  28 U.S.C. § 994(t).  The Sentencing Commission has determined that a defendant's circumstances meet this standard, *inter alia*, when the defendant is "suffering from a terminal illness" or a "serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," or if, in the judgment of the BOP, the defendant's circumstances are extraordinary and compelling for "other

reasons." U.S.S.G. § 1B1.13(1)(A) & Application Note 1(A), (D). In a recent case, however, the Second Circuit held that with respect to a compassionate release motion brought by a defendant (as distinguished from the BOP), the policy statement set forth in U.S.S.G. § 1B1.13 is "not 'applicable,'" and that neither it nor the BOP's Program Statement constrains a district court's discretion to determine what reasons qualify as "extraordinary and compelling." *United States* v. *Brooker*, 976 F.3d 228, 235-36 (2d Cir. 2020); *see also United States* v. *Lisi*, No. 15 Cr. 457 (KPF), 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court finds that the majority of district courts to consider the question have found that the amendments made to 18 U.S.C. § 3582(c)(1)(A) grant this Court the same discretion as that previously give to the BOP Director, and therefore the Court may independently evaluate whether [a defendant] has raised an extraordinary and compelling reason for compassionate release."); *see generally United States* v. *Roney*, — F. App'x —, No. 20-1834, 2020 WL 6387844 (2d Cir. Nov. 2, 2020).[3] That said, while the Court does not consider itself bound by U.S.S.G. § 1B1.13, it will look to it for guidance. *See United States* v. *Thrower*, No. 04 Cr. 903 (ARR), 2020 WL 6128950, at *3 (E.D.N.Y. Oct. 19, 2020).

---

[3]   The Second Circuit remanded the matter to the district court after concluding that the lower court had misapprehended the limits of its own discretion. In so doing, the Court did not define what qualifies as "extraordinary and compelling" under 18 U.S.C. § 3582(c)(1)(A), other than to recall the directive in 28 U.S.C. § 994(t) that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *United States* v. *Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020).

6

Even if a court determines that "extraordinary and compelling reasons" exist, it must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable.  *See* 18 U.S.C. § 3582(c)(1)(A); *see also United States* v. *Harris*, No. 15 Cr. 445 (PAE), 2020 WL 5801051, at *2 (S.D.N.Y. Sept. 29, 2020).  In this regard, the Court again looks to, but does not consider itself bound by, the Sentencing Commission's view that a sentence reduction would be consistent with its policy statements if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(2).[4]

## DISCUSSION

The Government does not argue that Mr. Corley has failed to exhaust his administrative remedies, and the Court therefore proceeds to consider his application on the merits.  The issue at hand is whether Mr. Corley has identified "extraordinary and compelling reasons" warranting his release.  The Court finds that he has not.

In brief, Mr. Corley argues that the conditions of his incarceration place him at a higher risk of contracting COVID-19 (or of having a more severe reaction if infected), because of the nature of his confinement at the facility, his existing medical conditions, and the claimed inability of prison staff to handle

---

[4]  The § 3142(g) factors are largely duplicative of those in § 3553(a), but also include "whether the offense is a crime of violence" and "the weight of the evidence against the [defendant]." 18 U.S.C. § 3142(g)(1)-(4).

7

the outbreak.5  The Court recognizes that sister courts in this District have granted, and denied, compassionate release motions based on the existence of the COVID-19 pandemic and the risks of its transmission at prisons.  *See generally United States* v. *Morrison*, No. 16 Cr. 551-1 (KPF), 2020 WL 2555332, at *2 (S.D.N.Y. May 20, 2020); *see also United States* v. *Kerrigan*, No. 16 Cr. 576 (JFK), 2020 WL 2488269, at *3 (S.D.N.Y. May 14, 2020) (collecting cases).  But, as the Government relates, Mr. Corley has already contracted and recovered from the virus.  (Dkt. #313).  And while it is regrettable that Mr. Corley is one of nearly 25 million Americans to have contracted this virus, *see* https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days (last accessed January 22, 2021), the Court is gratified to learn that he remained asymptomatic throughout his "active" infection period.

Similarly, while the possibility remains that Mr. Corley might contract the virus a second time, *see* https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/end-home-isolation.html (last accessed January 22, 2021) (describing cases of reinfection as "rare"), Mr. Corley's lack of co-morbidities suggest that this possibility, too, does not constitute an extraordinary and compelling reason to grant his motion for compassionate release.  Mr. Corley is 38 years old, which would otherwise place him at a comparatively low risk of hospitalization or death from COVID-19.  *See* Weekly Updates by Select Demographic and Geographic Characteristics, CENTERS FOR DISEASE

---

5   Mr. Corley's arguments, when initially made, were specific to his incarceration at the OCCF.  The Court presumes that they remain the same even after his transfer to FCI Ray Brook.

CONTROL AND PREVENTION (the "CDC"), https://www.cdc.gov/nchs/nvss/vsrr/covid_weekly/index.htm#AgeAndSex (accessed January 22, 2021). However, Mr. Corley notes that he suffers from hypertension, and that "people with hypertension are three times more likely to require hospitalization from COVID-19." (Dkt. #287 at 6 and Ex. C).

In analyzing co-morbidities and COVID-19, the CDC distinguishes conditions that place individuals at higher risk with regard to COVID-19, from conditions that *might* place individuals at higher risk, but for which more study is required. *See* CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (accessed January 22, 2021). Mr. Corley's history of hypertension falls into the latter category.

There is nothing in the materials submitted to the Court to suggest that Mr. Corley has been unable to care for himself or has been neglected by BOP or OCCF medical personnel.[6] Instead, Mr. Corley appears to have received appropriate medical care while incarcerated. *See, e.g.*, *United States* v. *Brady*, No. 18 Cr. 316 (PAC), 2020 WL 2512100, at *3-4 (S.D.N.Y. May 15, 2020) (acknowledging serious nature of defendant's medical conditions but denying

---

[6] The Court agrees with the Government's observation that Mr. Corley's records reflect his declination of medication for high blood pressure.

9

compassionate release where conditions stable and managed in BOP facility); *United States* v. *Garcia*, No. 18 Cr. 802 (CM), 2020 WL 2468091, at *5-6 (S.D.N.Y. May 13, 2020) (denying compassionate release to defendant with asthma, hypertension, and heart conditions housed in facility with 40 documented cases of virus); *cf. United States* v. *Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia.  But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

Separately, the factors set forth in 18 U.S.C. § 3553(a) counsel against granting Mr. Corley's motion.  Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need "to protect the public from further crimes of the defendant."  *See* 18 U.S.C. § 3553(a)(1), (a)(2)(C).  As the Court noted at sentencing, Mr. Corley has a decades-long criminal history, which neither familial struggles with drug addiction nor the birth of his children has caused to abate.  What is more, Mr. Corley's significant role in the charged narcotics conspiracy contributed to the debasement of the West Farms community.  It would undercut the § 3553(a) factors for the Court to allow Mr. Corley to serve just one-third of a 70-month sentence.  Accordingly, even if the Court had found extraordinary and compelling circumstances on the facts presented,

which it has not, it would deny Mr. Corley's application based on its consideration of the § 3553(a) factors.[7]

## CONCLUSION

For the foregoing reasons, Defendant Anthony Corley's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is DENIED. The Clerk of Court is directed to terminate the motion at docket entry 287.

SO ORDERED.

Dated:   January 25, 2021
         New York, New York

*Katherine Polk Failla*

KATHERINE POLK FAILLA
United States District Judge

---

[7]   To the extent he has not done so already, Mr. Corley can pursue relief in the form of a furlough under 18 U.S.C. § 3622 or home confinement as contemplated in the CARES Act, Pub. L. No. 116-136 (2020), and the Attorney General's April 3, 2020 memorandum to the BOP. The decision to grant that relief, however, is reserved to the discretion of the BOP.